UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SANDRA ISENBERG,

    Plaintiff,

v.                                              Case No:  3:14-cv-1360-J-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

### OPINION AND ORDER

Plaintiff, Sandra Isenberg, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Social Security Disability Insurance Benefits ("DIB").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

On May 13, 2011, Plaintiff filed an application for a period of disability and DIB alleging disability beginning June 1, 2003. (Tr. 189-92). Plaintiff's application was denied initially (Tr. 105-09), and after reconsideration. (Tr. 111-18). A hearing was held before Administrative Law Judge Theodore Kennedy (the "ALJ") on April 18, 2013. (Tr. 40-90). On May 31, 2013, the ALJ issued an unfavorable decision. (Tr. 38-62). Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on September 19, 2014. (Tr. 1). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on November 4, 2014. The parties having filed memoranda of law in support of their positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2003, her alleged onset date, through December 21, 2008, her date last insured. (Tr. 29). At step two, the ALJ found that Plaintiff had the following severe impairments: an anxiety disorder and possible chronic microvascular ischemic changes. (Tr. 29). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 30).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except she could occasionally climb stairs or ramps, balance, stoop, kneel, crouch, or crawl; she could never climb ladders, ropes, or scaffolds; she could occasionally be exposed to vibrations; she could understand, remember, and carry out short, simple instructions; and she could occasionally be in contact with supervisors, co-workers, and the public.

(Tr. 31). At step four, the ALJ found that Plaintiff was incapable of performing her past relevant work as a telephone operator. (Tr. 33). At step five, the ALJ relied on the testimony of a vocational expert to find that could work as a laundry worker and packer. (Tr. 34). The ALJ concluded that Plaintiff has not been under a disability from June 1, 2003, through December 31, 2008, her date last insured. (Tr. 34).

**II.     Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to properly weigh the medical evidence; (2) whether the ALJ erred by failing to properly evaluate Plaintiff's credibility; and (3) whether the ALJ erred by relying on flawed vocational expert testimony. The Court addresses each issue below.

**a)  Whether the ALJ erred in by failing to properly weigh the medical evidence.**

Plaintiff argues that the ALJ erred by according "little weight" to the opinion of Oscar A. Rodriguez-Diaz, M.D., Plaintiff's treating physician. (Doc. 14 p. 10). Plaintiff contends that the ALJ's vague conclusion that Dr. Rodriguez-Diaz's opinion conflicted with the medical record was insufficient to permit judicial review because the ALJ failed to identify any specific findings in the records contrary to Dr. Rodriguez-Diaz's opinion. (Doc. 14 p. 10). As a result, Plaintiff argues, the opinion of Dr. Rodriguez-Diaz was entitled to controlling weight. (Doc. 14 p. 11). In the alternative, even if Dr. Rodriguez-Diaz's opinion is not entitled to controlling weight, Plaintiff

contends that the ALJ still erred by failing to weigh Dr. Rodriguez-Diaz's opinions using the factors in 20 C.F.R. §§ 404.1527 and 416. (Doc. 14 p. 12).

In response, Defendant contends that while Plaintiff may disagree with the ALJ's evaluation, Plaintiff has failed to show that the ALJ did not provide "good cause" to discount Dr. Rodriguez-Diaz's opinion in accordance with the proper legal standards or that the ALJ's determination was unsupported by substantial evidence. (Doc. 18 p. 4).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

The record reflects that Plaintiff has been treated by Dr. Rodriguez-Diaz since 1987 at Norgal Family Medicine. (Tr. 283). The treatment records are handwritten and largely illegible. The following summary is limited to the legible portions of the record. At a visit on July 7, 2003, Dr. Rodriguez-Diaz diagnosed neuropathy and degenerative joint disease in the cervical spine at C6-7. Plaintiff's medications included Neurontin, Prednisone, and Elavil. (Tr. 471). On July 11, 2003, Prednisone was stopped due to an allergic reaction. (Tr. 472). On February 26, 2004, Plaintiff reported "general body pain." (Tr. 473). At a follow-up on April 6, 2004, Plaintiff described "joint pain." (Tr. 474). On March 22, 2005, Plaintiff complained of lower back pain, which had kept her from working, and carpal tunnel syndrome. (Tr. 475).

Plaintiff was not seen again until August 30, 2007. (Tr. 476). Her medications included Lyrica, Cymbalta, and Ultracet. (Tr. 476). On October 30, 2007, Plaintiff reported intolerance to Cymbalta. (Tr. 477). On October 16, 2009, Plaintiff was seen for back pain and edema. (Tr. 481). She was diagnosed with lumbar sprain. (Tr. 481). At a visit on December 16, 2009, Plaintiff was seen for follow-up after unspecified arthroscopic surgery. (Tr. 483). She had cramps and abdominal pain radiating to her back. (Tr. 483). On January 21, 2011, Dr. Rodriguez- Diaz diagnosed memory loss. (Tr. 484).

In a letter dated March 10, 2011, Dr. Rodriguez-Diaz reported treating Plaintiff for lumbosacral spine problems that began in 1996. (Tr. 283). Dr. Rodriguez-Diaz opined that Plaintiff was totally disabled since 2003. (Tr. 283).

Dr. Rodriguez-Diaz completed a Multiple Impairment Questionnaire on August 1, 2012 (Tr. 377-84). Dr. Rodriguez-Diaz reported treating Plaintiff every 4 to 6 months, most recently on June 11, 2012. (Tr. 377). Dr. Rodriguez-Diaz diagnosed chronic cervical and lumbar pain with radiculopathy to the arms and legs, numbness and loss of sensation, and moderate recurrent major

depression. Clinical findings included decreased sensation in the arms and legs to the feet. (Tr. 377). Diagnostic testing included an MRI of the brain showing chronic small vessel disease; an MRI of the lumbosacral spine showing degenerative joint disease and spinal canal stenosis; and, x-rays of the cervical spine showing degenerative joint disease at C5-6, C6-7, and narrowing of the foramen at C3-4. (Tr. 378). Plaintiff's primary symptoms were pain and loss of sensation. (Tr. 378). Dr. Rodriguez-Diaz stated that the symptoms and limitations detailed in the questionnaire were present for the previous 4 to 5 years. (Tr. 383).

Dr. Rodriguez-Diaz opined that Plaintiff was able to sit for less than 1 hour total and stand/walk for less than 1 hour total in an 8-hour workday. (Tr. 379). When sitting, she needed to get up and move around every 30 minutes and not sit again for 15 minutes. (Tr. 379-380). Plaintiff could occasionally lift and carry 5 pounds, but never more. (Tr. 380). She had significant limitations performing repetitive reaching, handling, fingering, and lifting due to numbness in the hands and feet. (Tr. 380). Dr. Rodriguez-Diaz assessed that she was markedly limited (defined as effectively precluded) in her ability to use the upper extremities for grasping, turning, and twisting objects, and reaching. (Tr. 380-381). She was moderately limited (defined as significantly limited but not precluded) in her ability to perform fine manipulations. (Tr. 381). Her medications caused side-effects of somnolence and dizziness. (Tr. 381). Dr. Rodriguez-Diaz stated that Plaintiff's pain, fatigue, or other symptoms were frequently severe enough to interfere with attention and concentration. (Tr. 382). Depression also contributed to her symptoms and functional limitations. Dr. Rodriguez-Diaz stated Plaintiff is not a malingerer. She required frequent breaks to rest during the day for 15 to 20 minutes each time. (Tr. 382). Plaintiff had good days and bad days. (Tr. 383). Dr. Rodriguez-Diaz estimated that she would be absent from work, on the average, about two to three times a month. (Tr. 382).

In his opinion, the ALJ explained the weight he gave to Dr. Rodriguez-Diaz's opinion as follows:

> On August 1, 2012, Dr. Oscar Rodriguez completed a multiple impairment questionnaire (Exhibit 11F). He opined that the claimant was limited to lifting five pounds, sitting one hour total in an eight-hour workday, and stand/walking one hour total. He opined that her impairments or treatment would result in about two to three absence from work per month. He further opined that her limitations had lasted for the last four to five years.
>
> The undersigned gives these opinions, little weight, as they are inconsistent with the medical records during the relevant period at issue, and the checklist form provided by the claimant's attorney was completed over three years following the claimant's last date insured.

(Tr. 32).

In this case, the Court finds that the ALJ had good cause to accord "little weight" to Dr. Rodriguez-Diaz's opinion. As the ALJ noted in his opinion, Dr. Rodriguez-Diaz's opinion is inconsistent with the medical records during the relevant period at issue. Plaintiff's physical and neurological examinations from the relevant time period were within normal limits. (Tr. 471-80, 533-36). Nothing in Dr. Rodriguez-Diaz's mostly illegible treatment notes from the period prior to Plaintiff's date last insured, nor the essentially normal findings from the May 2006 CNS neurological examination suggest limitations as extreme as those identified by Dr. Rodriguez-Diaz. (Tr. 471-80, 533-36).

In addition, the ALJ was correct to note that Dr. Rodriguez-Diaz's opinion was rendered over three years following Plaintiff's date last insured. While Dr. Rodriguez-Diaz opined that Plaintiff had had the limitations he found for the last "4 to 5 years," there are no treatment records from five years prior that would corroborate such extreme limitations in lifting, walking, standing, sitting, or the use of Plaintiff's arms. (Tr. 383, 471-80). Notably, the treatment notes from roughly five years prior to his opinion on August 1, 2012, Dr. Rodriguez-Diaz's notes from August 30,

2007, does not include any findings consistent with extreme limitations, but only that he diagnosed Plaintiff with hypertension, gastroesophageal reflux disease, and chest pain. (Tr. 479). Furthermore, the objective diagnostic evidence upon which Dr. Rodriguez-Diaz based his opinion were not from the relevant period and do not support Dr. Rodriguez-Diaz's claim that Plaintiff had the limitations he opined before her date last insured.

The ALJ's decision to accord little weight to Dr. Rodriguez-Diaz's opinion was supported by good cause. Accordingly, the Court will not disturb the ALJ's weighing of the evidence on appeal.

### b) Whether the ALJ erred by failing to properly evaluate Plaintiff's credibility.

Plaintiff argues that the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible" was insufficient. (Doc. 14 p. 14). Plaintiff contends that the ALJ's finding that Plaintiff's examinations were normal during the period at issue is not supported. (Doc. 14 p. 14).

In response, Defendant argues that Plaintiff has failed to show that the ALJ improperly evaluated her subjective statements of pain and symptoms or that the ALJ's credibility finding was unsupported by substantial evidence. (Doc. 18 p. 11). Defendant contends that the ALJ evaluated Plaintiff's subjective statements in accordance with the proper legal standards, and articulated several well-supported reasons for determining that her subjective statements were not entirely credible. (Doc. 18 p. 12).

After an ALJ has considered a claimant's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff,

then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (internal citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

      In his opinion, the ALJ explained his credibility finding as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> In terms of the claimant's alleged back pain, leg problems, hand problems, headaches, and memory and learning problems, the medical evidence of record during the period at issue does not support the claimant's allegations. During the relevant period at issue, physical and neurological examinations were generally within normal limits (Exhibit 16F and 17F). There was no evidence of hospitalizations or surgeries. There was no medical evidence of any significant side effects of medication. There was no evidence of any treatment from any mental health professional.

(Tr. 32).

      In this case, the Court finds that the ALJ's credibility finding was supported by substantial evidence. As the ALJ explained, the medical evidence of record simply does not support Plaintiff's allegations of disabling limitations. Despite Plaintiff's arguments that the ALJ's credibility finding

is insufficient, Plaintiff has failed to offer any medical evidence that would undermine the ALJ's reasoning.

The burden is on Plaintiff to prove that she is disabled through step four of the sequential evaluation process. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Plaintiff failed to produce sufficient evidence to carry her burden and the ALJ did not err in finding Plaintiff's subjective complaints were unsupported by the record. The Court will not disturb the ALJ's credibility determination on appeal.

### c) Whether the ALJ erred by relying on flawed vocational expert testimony.

Plaintiff argues that the ALJ failed to present a hypothetical question to the vocational expert that included all the mental restrictions found for Plaintiff in his decision. (Doc. 14 p. 15). Specifically, while the ALJ found Plaintiff had moderate difficulties in concentration, persistence, or pace and moderate restrictions in social functioning, these restrictions were omitted from the hypothetical question posed to the vocational expert. (Doc. 14 p. 15). Plaintiff contends that the ALJ's RFC which restricted Plaintiff mentally to understand, remember, and carry out short, simple instructions, and have occasional contact with supervisors, co-workers, and the public, failed to account for Plaintiff's limitations. (Doc. 14 p. 15-16).

Defendant responds that the ALJ properly relied upon the testimony of the vocational expert to show a significant number of jobs exist in the national economy which Plaintiff could perform. (Doc. 18 p. 15). Defendant argues that the ALJ's finding that Plaintiff "may have had" moderate limitations in social functioning and in concentration, persistence, and pace, were made as part of the ALJ's step two Psychiatric Review Technique (PRT) finding, and were not part of the ALJ's ultimate RFC assessment. (Doc. 18 p. 15-16). Defendant contends that the ALJ's

hypothetical question and RFC finding sufficiently account for the ALJ's PRT findings. (Doc. 18 p. 16).

"At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. *Winchell v. Comm'r of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v)). An ALJ may use the Medical Vocation Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform. *Id*. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

The Court begins with Plaintiff's argument that the ALJ's hypothetical question to the vocational expert was incomplete because it did not contain a limitation corresponding to the ALJ's finding in his PRT analysis that Plaintiff had moderate restrictions in social functioning. (Doc. 14 p. 15). The Court is not persuaded by Plaintiff's argument. While finding that Plaintiff "may have had moderate limitations" in social functioning, the ALJ also found that Plaintiff was "able to interact with other people, and treatment records do not note any severe problems involving social functioning." (Tr. 30). Plaintiff testified that she had no problems getting along with people and did not have any disputes with people during the relevant period, June 1, 2003 through December 21, 2008. (Tr. 62). Nevertheless, the ALJ limited Plaintiff's RFC to only occasional contact with supervisors, co-workers, and the public, and included this limitation in the hypothetical questions posed to the vocational expert. (Tr. 31, 81-85). The Court finds that the restriction to "only occasional contact with supervisors, co-workers, and the public" accounts for

any restriction Plaintiff may have in social functioning. For this reason, the ALJ failure to specifically include the language "moderate limitation in social functioning" in the hypothetical question does not undermine the ALJ's reliance on the vocational expert's testimony.

The analysis is more complicated as to Plaintiff's argument that the hypothetical question was incomplete as it did not include restrictions for Plaintiff's moderate difficulties in concentration, persistence, or pace. In *Winschel*, the Eleventh Circuit explained "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 631 F.3d at 1180. "Instead, the hypothetical question must 'include or otherwise implicitly account for all of [a claimant's] impairments'--including those in concentration, persistence, or pace--for the answer to constitute substantial evidence." *Hines-Sharp v. Comm'r Soc. Sec.*, 511 F. App'x 913, 917 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1181)).

In this case, the ALJ implicitly accounted for any limitation Plaintiff may have had in concentration, persistence, or pace by limiting her RFC to work involving only short, simple instructions. (Tr. 31). The ALJ specified that while Plaintiff's "psychiatric impairments, alleged psychiatric symptoms, and subjective discomfort may have limited her to unskilled jobs not requiring complex or detailed task . . . claimant was fully capable of understanding, carrying out, and remembering simple instructions and tasks." (Tr. 33). This finding was supported by Plaintiff's own testimony that she could follow simple written and verbal instructions during the relevant time period. (Tr. 63).

An ALJ is not required to "intone the magic words concentration, persistence, and pace if the ALJ finds based on the PRT that a claimant has limitations in that broad functional area." *Hines-Sharp*, 511 F. App'x at 916. The ALJ's RFC finding limiting Plaintiff to work involving

only short, simple instructions encompassed the limitations found in the PRT. *See, e.g., Lee v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 539 (11th Cir. 2014) (finding that "[t]he ALJ adequately accounted for all of [the claimant's] impairments in the hypothetical posed to the VE because he implicitly accounted for [the claimant's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work."). The RFC findings were included in the hypothetical question posed to the vocational expert and, therefore, the vocational expert's testimony constituted substantial evidence. Accordingly, the Court will affirm on this issue.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 25, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties